UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GOLDEN BEAR INSURANCE COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation; and STARSTONE SPECIALTY INSURANCE COMPANY, a New Jersey corporation,<br><br>Defendant. | Case No. 2:20-cv-00027-RFB-EJY<br><br>**ORDER** |
| AND RELATED COUNTERCLAIM | |

Pending before the Court is Golden Bear Insurance Company's Motion to Strike Defendant StarStone Specialty Insurance Company's Initial Expert Report and Testimony Thereto (ECF No. 59).[1] The Court has considered Golden Bear's Motion, StarStone's Response (ECF No. 67), and Golden Bear's Reply (ECF No. 71). The Court finds as follows.

**I.      Relevant Background**

If the case caption does not give it away, this case involves an insurance dispute. Plaintiff, Golden Bear, issued a commercial general liability and an excess policy to Henderson Water Park ("HWP" aka "Cowabunga Bay"), an entity that Golden Bear states was an "additional insured" under policies issued by Evanston Insurance Company ("Evanston") and StarStone to Innovative Attraction Management LLC ("IAM"). ECF Nos. 51 at 4-5[2] and 59 at 2. HWP contracted with IAM to "determine and establish operating policies, standards of operations, services and maintenance, and other policies and procedures of the Aquatics Operations of the Park and … perform any such act necessary or desirable for the operation and maintenance of the Park that is

---

[1]     Golden Bear Insurance Company shall be referred to herein as either "Plaintiff" or "Golden Bear." Starstone Specialty Insurance Company shall be referred to as "StarStone."

[2]     ECF No. 51 is Golden Bear's pending Motion for Summary Judgment of which the Court may take judicial notice. *Lawson v. Klondex Mines Ltd.*, 450 F.Supp.3d 1057, 1071 (D. Nev. 2020) (internal citations omitted).

1

consistent with good waterpark management practices and are reasonably designed to provide for the efficient and profitable operation of the Park." ECF No. 51 at 8.

Golden Bear argues that Evanston issued a commercial general liability policy under which HWP is an additional insured, and StarStone issued an excess policy that follows form to the Evanston policy. ECF No. 59 at 3. Through its suit, Golden Bear asks the Court for declaratory relief that (i) Evanston had a duty to defend HWP in two personal injury ("PI") cases, (ii) Evanston had a duty to indemnify HWP in one of the two PI cases that settled, (iii) contribution is due from Evanston for fees and costs associated with the defense of both underlying PI cases, and (iv) contribution is due from Evanston and StarStone for the settlement of the one PI case that settled. *Id*.

Evanston did not disclose an initial expert. The instant dispute surrounds StarStone's initial expert disclosure, timely made, but which Plaintiff states includes irrelevant and improper opinions, and is "inadmissible because the purported expert interprets the insurance policies at issue, which invades the sole province of the Court." ECF No. 59 at 5-6. Plaintiff further states that StarStone's expert, Federick J. Fisher, J.D., CCP, "purports to opine on industry practices and standards, which are irrelevant to the issues of declaratory relief and contribution." *Id*. at 6.

In Response, StarStone contends that Plaintiff's Motion is meritless because Plaintiff does not identify where StarStone's expert "asserts the ultimate conclusion of law" that StarStone says is the "gravamen" of Plaintiff's Motion. ECF No. 67 at 1. StarStone further argues that its expert, Mr. Fisher, "advances the material aspects of … [its] defense regarding the applicability of the professional services exclusion in the StarStone following form policy," which understanding is "outside the ken of the average juror's knowledge … ." *Id* at 5.

StarStone states that Mr. Fisher's first opinion will help the jury "understand the different types of insurance" available to "commercial enterprise[s] … whose business of providing services to others for a fee is the subject of professional liability insurance." *Id*. at 6. StarStone also argues that Mr. Fisher will explain how Golden Bear's insured (HWP) could have sought coverage as an additional insured under the StarStone and Evanston policies. *Id*. StarStone argues that Mr. Fisher's second opinion is relevant because he will explain the Defendants' coverage positions within the

2

"industry's accepted practices," the process insurers go through when evaluating a request for coverage, and what is "usual and customary" when an insurer is "asked to determine whether coverage is available." *Id*.

StarStone contends Mr. Fisher's third opinion is "highly relevant and critical" because it will help the jury "understand that Golden Bear had professional services exclusions in its primary and excess policies, yet Golden Bear waived those provisions and voluntarily paid claims … ." *Id*. at 7. StarStone skips a discussion of Mr. Fisher's fourth opinion entirely (*id*.), but states his fifth opinion is relevant because it will help the jury understand that "Golden Bear's equitable contribution claim against StarStone is based on … [Golden Bear] allegedly having paid more than its fair share of the indemnity" Golden Bear owed to HWP. *Id*. at 7-8. StarStone argues that Mr. Fisher's opinion is not inadmissible because it embraces the ultimate issue of fact. *Id*. at 9. And, StarStone states Mr. Fisher does not state a conclusion of law. *Id*.

In Reply, Golden Bear argues that all of Mr. Fisher's opinions are offered to assist with the interpretation of the insurance contracts, which is solely the job of the Court. ECF No. 71 at 2. Golden Bear further contends that opinions and testimony regarding "the background to issuing insurance policies is irrelevant" to interpretation of the policies at issue. Regarding conclusions of law, Golden Bear quotes and underlines portions of Mr. Fisher's report that it presumably believes are impermissible legal conclusions. *Id*. at 3. Golden Bear contends that Mr. Fisher fails to address certain important material, which it admits is a credibility issue, and then alerts the Court to the fact that StarStone did not refer to Mr. Fisher's report "in opposition to or in support of the dispositive motions." *Id*. at 4.

II. **Discussion**

    A.    <u>Rule 702 of the Federal Rules of Evidence</u>

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Barabin v. Asent Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explains that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy, as stated by the court, requires "the evidence … logically advance a material aspect of the party's case." *Id*. (Citation omitted.) Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993). The role of the Court, however, is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id*. *citing Primiano v. Cook*, 598, F.3d 558, 564 (9th Cir. 2010).

When considering reliability, a flexible concept, the U.S. Supreme Court suggests several factors for the Court to consider, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000) (citing *Daubert,* 509 U.S. at 592–94). But, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Barabin*, 740. F.3d at 463 *citing Kumho Tire*, 526 U.S. at 153. As explained in *Barabin*, "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 464 *citing Daubert*, 509 U.S. at 589.

B. <u>Rule 704 of the Federal Rules of Evidence</u>

Rule 704, of the Federal Rules of Evidence, states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Thus, while testimony on an ultimate issue in a case is not "per se improper[,] . . . an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citations and emphasis omitted). In *Hangarter*, a bad faith insurance

case, the Court explained that while the expert's testimony that defendants "deviated from industry standards supported a finding that they acted in bad faith," the expert did not testify that he had reached the "legal conclusion that [d]efendants actually acted in bad faith." *Id*. The opinion regarding deviation from industry standards is admissible; whereas, a conclusion that defendants acted in bad faith is not. *Id.* (Citations omitted.)

Likewise, in *Kohler Co. v. Watts Water Technologies, Inc.*, Case No. CV-06-0143-AG (VBKx), 2009 WL 4263556, at *3 (C.D. Cal., March 17, 2009), the court states "that testimony 'embracing' the ultimate issue of fact is admissible, while testimony flatly stating a conclusion of law is not." Giving examples, the court explained: "'Was there a contract?' would more likely be excluded, while the question, 'Was the agreement in the usual general form of corporate indemnity agreements?' would be allowed." *Id*. This distinction is important in the case at bar.

C. The Court's Gatekeeper Role

In addition to whether the expert opinions at issue includes actual legal conclusions on the matters at issue, the Court must be cognizant of its overall role as gatekeeper, an active and important role when examining "all forms of expert testimony, not just scientific testimony." *Hangarter*, 373 F.3d at 1017 (citation omitted). As explained in *Hangarter*, the Ninth Circuit "require[s] a district court to make some kind of reliability determination to fulfill its gatekeeping function." *Id.* at 1018 *citing Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) *overruled*, *in part*, *on other grounds*, *Barabin*, 740 F.3d at 467. The Court's gatekeeping obligation is to admit only expert testimony that is reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar*, 299 F.3d at 1063–64. Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 *citing Daubert*, 509 at 588.

D. Interpretation of an Insurance Contract

"[T]he interpretation of [an] insurance policy is a question of law for the court." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Experts "cannot be used to provide legal meaning or interpret the policies as written." *Id.*; *see also Chale v. Allstate Life Ins. Co.*, 353

5

F.3d 742, 749 (9th Cir. 2003) ("Although testimony from medical experts can help inform the legal decision maker about the nature of these afflictions, it does not dictate the proper legal interpretation of this policy term. This is the province of courts rather than doctors.") (internal citation omitted); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law.") (citations and quotation marks omitted); *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 898–99 (9th Cir. 1993) (holding that an insurance expert's declaration that sulphur dioxide cloud constituted a "hostile fire" as described in insured's policies was improper expert testimony).

In *Wells Fargo Bank N.A. v. LaSalle Bank Nat. Ass'n*, Case No. 2:08-cv-1448-JCM (RJJ), 2011 WL 743748, at *3 (D. Nev. Feb. 23, 2011) (citing *McHugh*, 164 F.3d at 454 and *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir.1992)), the District Court of Nevada explained that "[u]nless a contract is deemed ambiguous or there is a term of the contract that requires an expert's explanation, it is improper for an expert to interpret or construe a contract in his opinion." Here, the question of whether the insurance contract is ambiguous is not before the Court. Thus, if Mr. Fisher's opinions are offered to explain or interpret an allegedly ambiguous insurance contract, then his opinions are, at best, premature because no determination of ambiguity has been made. Moreover, StarStone previously told the Court that the insurance contracts at issue contain no ambiguity whatsoever. StarStone's Motion for Summary Judgment, ECF No. 64 at 17 (of which the Court also takes judicial notice). Thus, for purposes of this Order, the Court accepts that any alleged ambiguity of the contracts at issue cannot justify opinions offered by Mr. Fisher on behalf of StarStone.

E. <u>Analysis of Mr. Fisher's Expert Report</u>.

i. *Scope of Retention*.

Mr. Fisher states that he was asked to opine on (i) "why Following Form Excess Insurance is obtained and whether the Form provided herein meets and is consistent with generally accepted practices together with related subsumed issues"; and (ii) "how service-based companies are insured for the various hazards they face to achieve financial security." ECF No. 59-2 at 9. Mr. Fisher then states that he "will address whether the coverage obtained … was consistent with generally accepted

practices [and] opine on any relevant impact IAM's coverage portfolio has on the issues presented by Plaintiff …" *Id*. at 9-10.

      *ii.*  *Mr. Fisher's Brief Overviews.*

  After outlining the issues on which he was asked to opine, Mr. Fisher spends six and one-half pages providing the Court with "brief" overviews of "Insuring Service based Businesses," "Exclusions," "Co-ordinating [sic] CGL and Professional Liability Exposures," "Excess policies," and "what is meant by an 'Additional Insured." ECF No. 59-2 at 10-16. These overviews appear to be primers intended to help a trier of fact understand custom and usage in insurance policies relating to service-based businesses generally. *Id*. at 59-2 at 10 n.1. However, while testimony regarding industry custom and practice is admissible for purposes of addressing insurance contract ambiguities, StarStone states there are *no* contract ambiguities applicable in this case. ECF No. 64 at 17. Thus, in accordance with settled law, if Mr. Fisher's brief overviews are offered to lay the foundation for his interpretation of the insurance contracts at issue, these sections are inadmissible as a matter of law. *Wells Fargo Bank N.A.*, 2011 WL 743748, at *3.

  However, because it is unclear what the true purpose of the six and one-half pages of brief overviews offered by Mr. Fisher are intended to achieve, the Court reviewed these overviews closely and, as explained below, finds most of the content irrelevant. The identified sections do not "logically advance a material aspect of the party's case." *Barabin*, 740 F.3d at 463.

- ECF No 59-2 at 10, under the header "A Brief Review of Insuring Service Based Businesses," the Court strikes the last sentence of the first paragraph beginning with "One insurer" and ending with "(See Exhibit C-1)."

- *Id*. at 11: The Court strikes the language appearing near the top of page 11 beginning with the words "A well-rounded portfolio" and ending with "requires coordination and analysis."

- *Id*.: The Court strikes the portion of the first full paragraph on page 11 beginning with "That is unlike an architect" through and ending with "as to the medical professions."

- *Id*.: The Court strikes the second paragraph on page 11 in its entirety. This paragraph begins with "However" and ends with "or property damage."

- *Id*.: The Court strikes the language in the third full paragraph on page 11 that begins with "such as interior design professionals" and ends with "arise from a professional service."

7

- *Id*.: The Court strikes the language in the third full paragraph on page 11 beginning with "This necessity has often been called" and ending with "as discussed further below."

- *Id*. at 11-12: Under the header "A Brief review of Exclusions," the Court strikes the first paragraph in its entirety.

- *Id*. at 12: The Court strikes the indented paragraph on page 12 beginning with "Policy exclusions—both those" and ending with "in all professional liability policy forms."

- *Id*. at 12-13: The Court strikes the sentence beginning on page 12 with "IRMI for instance, states" and ending on page 13 with the words "under fiduciary liability coverage forms."

- *Id*. at 13: The Court strikes the indented paragraph on page 13 beginning with the language "Exclusion by Both CGL and PL Policies" through the end of the paragraph.

- *Id*. at 13: The Court strikes the indented paragraph on page 13 beginning with the words "The issues raised" and ending with "discussion in section VII.F"

- *Id*. at 13-14: The Court strikes the sentence on page 13 beginning with "IRMI's PLI goes on to state" through the end of the indented paragraph at the top of page 14.

- *Id*. at 14: The Court strikes the language in the first full paragraph on page 14 beginning with "Consistent with the above" and ending with "or property damage."

- *Id*.: The Court strikes the last sentence in the first full paragraph on page 14 beginning with "Note too" and ending with "instead of at inception."

- *Id*.: The Court strikes the first paragraph on page 14 under the header "A Brief Review of Excess policies."

- *Id*.: The Court strike the language in the second paragraph on page 14 under the header "A Brief Review of Excess policies" beginning with "Insurance has traditionally" and ending with "businesses do obtain excess insurance."

- *Id*. at 15-16: Under the header "A Brief Review of what is meant by being an 'Additional Insured,'" the Court strikes the sentence beginning on page 15 with "So wrote Timothy M. Thorton" through the end of the first full paragraph on page 16.

- *Id*. at 16: The Court strikes the second full sentence of the second paragraph on page 16 that starts with "For instance" and ends with the word "made by the client."

- *Id*.: The Court strikes the language on page 16 beginning with the words "Homeowners may require" through the end of the last sentence in the last paragraph.

### iii. Mr. Fisher's expert opinions.[3]

#### a. Opinion 1: IAM's Portfolio of Coverage was Consistent with Generally Accepted Industry Practices.

Plaintiff raises no objection to the introductory discussion under this header that begins at the bottom of page 17 and ends in the middle of page 18 with the language "an additional $15,000 per year." *See* ECF No. 71 at 3. The Court also finds these statements offer no expert opinions and, therefore, they are not struck.

Golden Bear does take issue with Mr. Fisher's discussion of Blanket Additional Insured Endorsements that appears in the third full paragraph on page 18.[4] Plaintiff argues this discussion "contains conclusions of law." *Id*. The Court finds these statements impermissibly interpret an "unambiguous" insurance contract, as stated by StarStone (ECF No. 64 at 17), and reach an inadmissible legal conclusion that "the endorsement was a blanket endorsement requiring a contractual provision between the Insured and the other contracting party whereby the contracting party was requiring they be added as an additional insured." ECF No. 59-2 at 18. In fact, Mr. Fisher then offers two more legal conclusions including that (1) "[i]n the absence of such a contractual requirement the Blanket AI Endorsement would not apply" and (2) "neither of the two contracts between … [HWP] and IAM required that … [HWP] be added as an [a]dditional [i]nsured to IAM's policies." *Id*.

Contract interpretation and legal conclusions are the sole responsibility of the Court. As explained in *Maffei*, *supra*, there is a distinction between an expert providing an opinion based on a set of facts (whether an event (a fire) occurred causing another event (the release of a harmful substance)), and an insurance expert opining that a particular term fell within the definition of a contract term for purposes of coverage. 12 F.3d at 898. The court in *Maffei* found the term at issue was not ambiguous, the expert's interpretation of the term was the province of the court, and the expert's opinion was properly excluded. *Id*. at 898-99. As further stated by the Ninth Circuit, experts

---

[3] Golden Bear does not mention the timeline that appears on pages 16 and 17 of Mr. Fisher's report and the Court finds no facial basis for its exclusion.

[4] Golden Bear takes issue with the language beginning with "In addition, the Evanston policy" and concluding at the end of the paragraph.

| | |
|---|---|
| 1 | interpret and analyze facts. *Crow Tribe*, 87 F.3d at 1045. Experts may testify to compliance with |
| 2 | or deviation from industry standards, but not whether there is or is not coverage under an insurance |
| 3 | contract because this is a matter of law. *Hangarter*, 373 F.3d at 1017. *See also Dubinsky v. Liberty* |
| 4 | *Surplus Insurance Corporation*, Case No. cv 08-6744-MMM (Shx), 2010 WL 11506068, at *9 n. |
| 5 | 65, *citing Navarro v. Transportation Ins. Co.*, Case No. B154205, 2004 WL 740014, *12 (L.A. Supr. |
| 6 | Ct. Apr. 7, 2004) (Unpub. Disp.) ("Expert opinion evidence in [a] bad faith case is admissible on |
| 7 | certain factual matters such as industry standards for adjusting covered claims, the promptness of an |
| 8 | insurer's payment on a claim and the reasonableness of an investigation.... However, other matters |
| 9 | such as whether coverage exists for certain claims, application of various insurance regulations, and |
| 10 | whether an insurer acted with proper cause for its actions are not permissible matters for expert |
| 11 | opinion in bad faith cases because they involve legal issues." *Citing Neal v. Farmers Insurance* |
| 12 | *Exchange*, 21 Cal.3d 910, 924 (1978); *Summers v. A.L. Gilbert Co.*, 69 Cal.App.4th 1155, 1169 |
| 13 | (1999); and Croskey, et al., CAL. PRACTICE GUIDE: INSURANCE LITIGATION, ¶ 15:1004, |
| 14 | pp. 15-172-15-173 (The Rutter Group)). |

Mr. Fisher's opinions interpreting the insurance policies at issue do not explain or opine on a fact, but apply law regarding blanket endorsements to the Evanston and StarStone policies for purposes of interpreting the policies' requirements and, thus, coverage. Mr. Fisher does not merely refer to the law in expressing his opinion, and he does not merely couch his opinion in legal terms as StarStone argues. Instead, Mr. Fisher interprets what StarStone says is an unambiguous insurance contracts, reaches the conclusion that an endorsement in the policies was a blanket endorsement, and opines that there had to be a contract between the parties in order for HWP to be added as an additional insured. Mr. Fisher adds that in the absence of such a contract, the blanket additional insured endorsement does not apply. Mr. Fisher goes on to state that there was no contract requiring HWP be added as an additional insured under IAM policies. These interpretations of the insurance contracts at issue reach legal opinions that determine coverage and fall within the area reserved strictly for the Court. Thus, the opinions expressed on page 18 of Mr. Fisher's report, beginning with "Thus, the endorsement was a blanket endorsement requiring" and ending with "as an Additional Insured to IAM's policies" are struck.

Mr. Fisher continues his Opinion 1 by discussing the "portfolio of coverage" obtained by IAM, the content of that coverage, appropriateness of the coverages, and the presumption that certain coverage was obtained because any bodily injury or property damages would "likely" be the result of an error committed by IAM. ECF No. 59-2 at 18-19. Mr. Fisher opines that the coverages obtained and exclusions from coverage stated in the policies were consistent with industry practices. The Court finds that, given IAM's role as manager of HWP (Golden Bear's insured), these opinions are not wholly irrelevant to the questions before the Court, do not interpret contracts, and do not state legal conclusion. Therefore, this portion of Mr. Fisher's Opinion 1 is admissible.

Golden Bear next objects to Mr. Fisher's opinion that appears on page 24 of ECF No. 59-2. *See* ECF No. 71 at 3:7-11. In this portion of Mr. Fisher's report, he interprets the insurance contracts at issue, opines that an additional insured endorsement "would not negate the Professional Services exclusion" and concludes that he "can only opine once more that had … [HWP] been an additional insured to the Evanston and StarStone policies, the professional services exclusion would have precluded any payment." ECF No. 59-2 at 24. These opinions do not interpret an ambiguous contract provision as consistent or inconsistent with generally accepted insurance practices; nor are they couched in legal terms. Rather, Mr. Fisher offers coverage determinations – the ultimate issue that the trier of fact must determine in this case. Thus, Mr. Fisher's expert opinions that appear in the last paragraph on page 24, beginning with the language "The endorsement, however" through the end of the paragraph, are struck.

      **b. Opinion 2: Evanston and StarStone's Coverage Positions are consistent with Generally Accepted Industry Practices**.

After a single introductory sentence in Opinion 2, Mr. Fisher makes a statement of fact regarding the primary commercial general liability policy issued to IAM. This fact is uncontested and the Court finds no basis to strike this statement. Thereafter, Mr. Fisher (i) opines that "[c]onsistent with generally accepted practices, the Evanston policy contained a blanket additional insured endorsement that required a written contract for anyone seeking additional insured status," (ii) opines that consistent with industry practice the policy contained a professional services exclusion, and (iii) states that Golden Bear "had similar exclusions in its primary policy insuring"

HWP. ECF No. 59-2 at 19. The first opinion under the Opinion 2 header ends with a legal conclusion regarding a written contract requirement to qualify as an additional insured. Mr. Fisher cannot offer legal conclusions regarding the parties' obligations under the policy as this statement is purely the province of the Court. *Hangarter*, 373 F.3d at 1017; *McHugh*, 164 F.3d at 454; *Crow Tribe*, 87 F.3d at 1045; *Wells Fargo Bank, N.A.*, 2011 WL 743748, at *3. Therefore, this portion of Mr. Fisher's first opinion is struck.

Mr. Fisher's second opinion regarding generally accepted practice is admissible. Mr. Fisher's statement of fact, that Golden Bear issued a policy to HWP that is similar to the Evanston policy issued to IAM, while not clearly probative of whether Evanston and StarStone had a duty to defend and/or contribute to HWP as an additional insured under their respective policies, is related to Mr. Fisher's Opinion 3 discussed below that the Court finds tangentially relevant to the questions presented. Therefore, this statement of fact is admissible. *Barabin*, 740 F 3d. at 463-64; Fed. R. Evid. 703.

Mr. Fisher next (i) opines that what Evanston did upon receipt of the claim was within generally accepted claims practices, (ii) states that Evanston issued a denial or reservation of rights letter discussing the professional services exclusion and HWP's lack of contract with IAM requiring HWP be named as an additional insured, (iii) states that there "is no surprise" that IAM's commercial GL "coverages contained a professional services exclusion," and (iv) concludes that Evanston and StarStone's denial was consistent with generally accepted practices. ECF No. 59-2 at 19. How Evanston investigated or otherwise handled the original claims submission by HWP is not at issue, but appears uncontested. Golden Bear does not move to strike these statements and, the Court finds no basis to do so. Mr. Fisher's statement pertaining to the denial or reservation of rights letter and its content is a statement of fact that Golden Bear does not contest. Hence, this statement of fact is admissible.

Mr. Fisher's statements that IAM's GL policy contained a particular exclusion is of "no surprise" is not an expert opinion and, therefore, it is struck. *Barabin*, 740 F.3d at 465 (citation omitted) (trial courts have broad discretion in performing its gatekeeping function). Mr. Fisher's final statement, that the denial of coverage was within generally accepted practices, is appropriate

expert testimony; although, clearly subject to challenge on cross-examination. *U.S. Fidelity and Guar. Co. v. Soco West, Inc.*, Case No. CV 04-29-BLG-RFC, 2006 WL 5230019, at *2 (D. Mont. April 21, 2006) (where an expert satisfies the Rule 702 standards, cross-examination is the proper method of challenging the expert's opinions). Therefore, Mr. Fisher's Opinion 2 is struck, in part, as discussed above.[5]

        c.        **Opinion 3: The policies issued by Plaintiff contain a Professional Services Exclusion, and 4 Additional Insured Endorsements, three of which apply only when there is a Contractual Requirement**.

The first five paragraphs in this section of Mr. Fisher's report (i) discuss, in detail, Golden Bear's policy covering HWP, and (ii) question Golden Bear's decision to contribute to a settlement that underlies this litigation. ECF No. 59-2 at 20. Exercising its broad discretion to determine admissibility, the Court finds this discussion of Golden Bear's policy covering HWP tangentially relevant to the questions presented regarding Evanston and StarStone's duties under the insurance policies they issued and, therefore, admissible. *Barabin*, 740 F.3d at 465; *United States v Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 591-93 (the district court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact")). In contrast, Mr. Fisher's opinion that Golden Bear had no contractual obligation to contribute to the settlement is of no relevance to Evanston and StarStone's legal obligations and is therefore excluded. *Barabin*, 740 F.3d at 463; *Hangarter*, 373 F.3d at 1017; *McHugh*, 164 F.3d at 454; *Crow Tribe* 87 F.3d at 1045; *Wells Fargo Bank, N.A.*, 2011 WL 743748, at *3.

After the paragraph discussing Golden Bear's decision, Mr. Fisher offers a quote from the "Hartford … website." *Id.* at 59-2 at 20-21. Mr. Fisher follows the Hartford quote by again questioning Golden Bear's coverage decision. *Id.* at 21. The entirety of this content includes no admissible expert opinion. Mr. Fisher's incredulity regarding Golden Bear's decision to contribute to a settlement is not relevant expert opinion. Further, even if arguably relevant, this opinion is far

---

[5] Plaintiff does not mention the portion of Mr. Fisher's report stating that "Evanston has not depleted its per occurrence limit on" one of the two underlying PI claims. *See* ECF Nos. 59 and 71 and ECF No. 59-2 at the bottom of 19. Thus, this information remains available to Mr. Fisher to the extent it may relate to otherwise admissible expert opinions.

more prejudicial than it is probative of any question of fact before the Court. Fed. R. Evid. 703 (stating, in relevant part, that "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."). This discussion is struck under Rule 703.

> d. **Opinion 4. Had Henderson Sued IAM, the General Liability and Excess Policies would have had valid coverage defenses due to their respective Professional Services Exclusions and Contractual Requirement conditions in the Evanston Blanket Additional Insured Endorsement. The Lloyds Error & Omission policy as well, would have an additional coverage defense due to their Insured versus Insured Exclusion**.

Opinion 4 begins by posing a hypothetical question of what would have happened had HWP sued IAM based on its failure to prevent the personal injury losses that underly the instant litigation. ECF No 59-2 at 21. Mr. Fisher states what he "believe[s] the insurance companies could have done" in such a circumstance. *Id*. The discussion includes conclusions regarding coverage denials by StarStone and Evanston, and state that, in the end, "there would be no benefit to … HWP … [filing] such a lawsuit. *Id*. at 21-22. The report then quotes approximately a page of information from the International Risk Management Institute and concludes that the coverage obtained by IAM "was appropriate" and accurately responded to risk. *Id*. at 22.

As stated above, StarStone's Response to Golden Bear's Motion to Strike is silent as to Mr. Fisher's Opinion 4. *See* ECF No. 67 at 7. Hence, StarStone appears not to oppose striking the entirety of this opinion. *See* LR 7-2(d); *Las Mojarra Loca, Inc. v. Wells Fargo Merchant Services LLC*, Case No. 2:19-cv-725-JCM-CHW, 2019 WL 6499108, at *2 (D. Nev. Dec. 3, 2019) (LR 7-2(d) applies when a party fails to oppose a portion of a motion). Accordingly, Mr. Fisher's Opinion 4 is struck by the Court.

> e. **Opinion 5: Golden Bear Insurance Company should not be allowed to have more recovery rights from IAM than HWP would have**.

Mr. Fisher's Opinion 5 summarizes the insurance obtained by IAM, its policies limits, and exclusions, thereafter concluding that it is "obvious" that "Golden Bear is attempting to obtain benefits that its own insured … [HWP] would not have been able to obtain had they brought a claim

against IAM. ECF No. 59-2 at 23-24. Mr. Fisher's statement regarding Golden Bear's "obvious" goal is not an expert opinion and is struck. *Barabin*, 740 F.3d at 465.

Mr. Fisher reiterates that the policies at issue "contained insured versus insured exclusions," Blanket Endorsements that required a contractual obligation, and that the insurance contracts did not require HWP be an additional insured. *Id*. at 24. This, as stated numerous times above, interpretation of a non-ambiguous insurance contract and legal conclusions are not admissible. The remainder of Mr. Fisher's opinions in this section are inadmissible for the reasons discussed above in section II.E.iii.a.

For the reasons stated herein, the opinions expressed by Mr. Fisher under the header Opinion 5 are struck by the Court.

### III. ORDER

Based on and consistent with the foregoing, IT IS HEREBY ORDERED that Golden Bear Insurance Company's Motion to Strike Defendant StarStone Specialty Insurance Company's Initial Expert Report and Testimony Thereto (ECF No. 59) is GRANTED in part and DENIED in part consistent with the above findings.[6]

Dated this 17th day of June, 2021.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[6] To the extent any clarification is needed, the Court invites the parties to seek a hearing at which the Court will provide.