UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Golden Bear Insurance Company, | Case No. 2:20-cv-00027-RFB-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| Evanston Insurance Company, StarStone Specialty Insurance Company, | |
| Defendants. | |

## I.   INTRODUCTION

Before the Court for consideration is Plaintiff's Motion for Summary Judgment or in the alternative, Partial Summary Judgment [ECF No. 51], Defendant StarStone's Counter Motion for Summary Judgement [ECF No. 64], Defendant Evanston's Motion for Summary Judgement [ECF No. 66], and Plaintiff's Appeal of the Magistrate Judge's Order on Plaintiff's Motion to Strike [ECF No. 90].

## II.   PROCEDURAL BACKGROUND

Plaintiffs filed suit in federal court on January 7, 2020. ECF No. 1. The complaint asserts two claims for relief: a duty to defend claim (for both declaratory relief against Evanston and equitable contribution against both defendants) and a duty to indemnify claim (for both declaratory relief and equitable contribution against both defendants). On February 27, 2020, Defendant Evanston filed an answer and a counterclaim against Plaintiff, seeking declaratory relief on both the duty to defend and duty to indemnify causes of action. ECF Nos. 14, 15. On February 28, 2020 Defendant StarStone filed an answer. ECF No. 18. On March 20, 2020, Plaintiff filed an answer to the Counterclaims. ECF No. 24.

On October 5, 2020, Defendant StarStone filed a motion for judgment on the pleadings. ECF No. 39. On August 27, 2020, the Court denied the motion for judgment on the pleadings. ECF No. 93.

On February 22, 2021, Plaintiff filed a motion for summary judgment or, in the alternative, motion for partial summary judgment. ECF No. 51. On March 15, 2021, Defendants filed a separate motion for summary judgment. ECF Nos. 64, 66. All of the foregoing motions were fully briefed as of April 19, 2021.

On March 10, 2021, Plaintiff filed a motion to strike Defendant StarStone's Designation of Initial Expert Witness, the Expert Report, and all testimony from the Expert. ECF No. 59. Plaintiff argued that the expert's materials are inadmissible because the expert improperly interprets the insurance policies at issue, invading the province of the Court. Defendant StarStone countered that the expert's testimony did not reach any ultimate conclusion of law. ECF No. 67. The Magistrate Judge granted the motion in part and denied the motion in part, finding that some elements of the expert's opinion were inadmissible as improper, and some were inadmissible as irrelevant. Plaintiff requests that the Court set aside the Magistrate Judge's ruling to the extent that some elements of the report were deemed admissible. ECF No. 90.

Oral argument was held on these motions on August 27, 2021. ECF No. 93. This written order follows.

### III.   FACTUAL BACKGROUND

#### A.   Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff Golden Bear Insurance Company issued a commercial general liability policy to Henderson Waterpark d/b/a Cowabunga Bay [hereinafter "Cowabunga Bay"] with a period of April 15, 2017 to April 15, 2018. This primary policy had an each occurrence limit of $1,000,000. Plaintiff also issued an excess policy for the same period which had an each occurrence and aggregate limit of $5,000,000. Innovative Attraction Management [hereinafter "IAM"] is a waterpark management company with which Cowabunga Bay entered into a contract for aquatic operations management, consulting services,

risk prevention, and lifeguard training. Defendant Evanston Insurance Company issued a commercial general liability policy to IAM with a period of November 27, 2016, to November 26, 2017, with an each occurrence limit of $1,000,000. ECF No. 66-11. Defendant StarStone issued an excess policy for the same period with a per occurrence and aggregate of $10,000,000. ECF No. 51.

### 1. The Underlying Actions

On June 18, 2017, an eight-year old boy drowned while visiting Cowabunga Bay. His estate and parents brought suit against Cowabunga Bay and IAM seeking damages (the "Bankston suit"). Golden Bear accepted Cowabunga Bay's defense of the Bankston suit. Evanston denied Cowabunga Bay's additional insured tender of the Bankston suit, but accepted IAM's tender. Golden Bear settled the Bankston suit for an amount in excess of Golden Bear's primary policy per occurrence limit.

Also on June 18, 2017, two other patrons sustained injuries at the water park. On June 17, 2019, they filed suit against Cowabunga Bay, later adding IAM. Golden Bear accepted Cowabunga Bay's tender (the "Hicks suit"). Evanston denied Cowabunga Bay's additional insured tender, but accepted IAM's tender.

### 2. StarStone's and Evanston's Insurance Policy

IAM's excess policy (issued by Defendant StarStone) is a "follow form" policy to the Evanston policy. This means that the interpretation of the Evanston policy would and does apply equally to the StarStone policy. The Evanston's primary policy contains a "Blanket Additional Insured Endorsement" which provides that,

> "A. Who is an Insured is amended to include as an additional insured any person or entity to whom you are obligated by valid, written contract to provide such coverage, but only with respect to negligent acts or omissions of the Named Insured and only with respect to any coverage not otherwise excluded in the policy. However: (1) the insurance afforded to such additional insured only applies to the extent permitted by law; and (2) if coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured."

A $500 premium to include the Blanket Additional Insured was paid as part of the "Commercial General Liability Coverage Part Declarations."

### 3. Contracts between IAM and Cowabunga

It is undisputed that there were two written contracts between IAM and Cowabunga Bay, (1) a December 24, 2015 Contract for Consulting Services (including risk prevention and lifeguard training) and (2) a December 24, 2015 Contract for Services (including aquatic operations management). The second of these contracts for aquatic operations management, includes the following language:

> "Indemnity. (A) Manager shall defend, indemnify and hold harmless the Client, its agents, officers, directors, employees, successors and assigns from and against losses, liabilities, damages, claims, costs, settlements, suits and attorney fees relating to or arising from the acts or omissions by Consultant, its employees, agents, sub-contractors in performance or non-performance of this Contract from any cause whatsoever, including, but not limited to: (i) breach of its representations or warranties or other obligations hereunder, and/or (ii) negligent acts or omissions, and/or (iii) willful misconduct…. Insurance. (A) The Manager shall procure and keep in force and effect at all times during the term of this Agreement and any extension thereof, insurance policies and coverages as noted in the sample certification in Annex C hereto."

While a majority of the text of Annex C appears illegible, the title of the document is "Certificate of Liability Insurance" and it is issued to IAM by their insurance agent, Haas & Wilkerson Insurance.

### 4. Events Related to the Blanket Additional Insured

Finally, it is undisputed that Cowabunga Bay at some point prior to April 12, 2017 requested to be added as an additional blanket insured under IAM's Evanston Policy and that on April 12, 2017, Cowabunga Bay requested that IAM provide proof that it was added as an additional insured to IAM's Evanston Policy. IAM's insurance agent, Haas & Wilkerson, and a representative from RT Specialty, the managing general agency for Evanston, once again discussed the blanket additional insured issue on July 20, 2017.

## IV. LEGAL STANDARD
### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V. DISCUSSION

Plaintiff moves for summary judgment as to all claims or in the alternative as to specific points of law regarding the duty to indemnify and duty to defend claims. Defendants move for summary judgment regarding each of Plaintiff's causes of action. Plaintiff seeks a declaratory judgment clarifying the parties' rights and obligations regarding the duty to defend and duty to indemnify. Plaintiff also seeks equitable contribution from Evanston/StarStone for its share of Cowabunga Bay's defense of the Underlying Actions under the insurance policies at issue and

Plaintiff's settlement of the Bankston Action and any settlement or judgment of the Hicks suit under the policies of insurance at issue.

### A. Choice of Law

The Court must first decide the law which applies to the disputes and policies at issue in this case. Nevada law honors the expressed intention of the parties as to the applicable law in the construction of a contract if the parties acted in good faith and not to evade the law of the real situs of the contract. See Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortgage Investors, 603 P.2d 270, 273 (Nev. 1979) (citing cases); See Progressive Gulf Ins. Co. v. Faehnrich, 327 P.3d 1061, 1063–64 (Nev. 2014). However, while both the December 24, 2015 Contract for Consulting Services (including risk prevention and lifeguard training) and the December 24, 2015 Contract for Services (including aquatic operations management) provide that the respective agreement shall be interpreted under Florida law, the relevant contract that determines the rights of the parties in this case is the contract between IAM and Evanston, which lacks a choice of law provision.

Nevada follows the Restat. 2d of Conflict of Laws (2nd 1988) in determining choice of law questions involving contracts, generally, and insurance contracts, in particular. Progressive Gulf Ins. Co. v. Faehnrich, 327 P.3d 1061, 1063–64 (Nev. 2014); see also Ferdie Sievers, 603 P.2d at 273 (citing and applying Restatement (Second) of Conflict of Laws § 187 to a contractual choice-of-law clause), Sotirakis v. USAA, 787 P.2d 788, 790-91 (Nev. 1990) (citing and applying Restatement (Second) of Conflict of Laws §§ 188 and 193 to an insurance choice-of-law question where the policy did not include a choice-of-law clause). Section 188 of the Restatement (Second) of Conflict of Laws sets out the "most significant relationship" test, establishing a five-factor test in the absence of an effective choice of law provision. Restat. 2d of Conflict of Laws, § 188 (2nd 1988) ("In the absence of an effective choice of law by the parties, the contacts to be taken into

account. . . .to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.") Section 193 of the Restatement (Second) of Conflict of Laws indicates a more specific principle for contracts of liability insurance, indicating that "the validity of [such a] contract and the rights created thereby are determined by the local law of the state which the parties understood was to be the principle location of the insured risk during the term of the policy…." Restat. 2d of Conflict of Laws, § 193 (2nd 1988), see also Progressive Gulf Ins. Co., 327 P.3d 1061, Sotirakis, 787 P.2d 788 (following the approach set out in § 193). The Court in Sotirakis reasons that the rule in § 193 is rational because "the principal location of the risk and cost of the policy were probably established according to" the law of the state where the insured risk was located. Sotirakis at 791. Here, the insured risk was a waterpark located in Henderson, Nevada during the entire term of the policy. As a result, the Court finds that Nevada law is the relevant law for interpreting the validity and rights of the contract between IAM and Defendants.

### B. Nevada Contract Law

Generally, interpretation of an insurance contract is a question of law, to be decided by the court. Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003), Grand Hotel Gift Shop v. Granite St. Ins., 839 P.2d 599, 602 (Nev. 1992). Under Nevada law, the terms of a contract must be given their plain meaning. See Traffic Control Servs. v. United Rentals Northwest, Inc., 87 P.3d 1054 (Nev. 2004). In interpreting an insurance policy, specifically, courts must examine the language from the viewpoint of one not trained in law or insurance, "giving the terms their plain, ordinary and popular meaning." McDaniel v. Sierra Health & Life Ins. Co., 53 P.3d 904, 906 (Nev. 2002). Any ambiguity in the terms of an insurance contract shall be resolved in favor of the insured and against

the insurer. Farmers Ins. Exch. v. Young, 832 P.2d 376, 377 (Nev. 1992). Courts must consider not merely the language of the policy, but also the intent of the parties, the subject matter of the policy, and the circumstances surrounding its issuance, in order to implement the reasonable expectations of the insured. See Nat'l Union Fire Ins. Co. of State of Pa,. v. Reno's Executive Air, Inc., 682 P.2d 1380, 1383-1384 (Nev. 1984) Sullivan v. Dairyland Ins. Co., 649 P.2d 1357 (Nev. 1982).

Under Nevada law, parties to a contract, even a written contract, may modify that contract by mutual agreement, including an oral agreement. Jensen v. Jensen, 753 P.2d 342, 344 (Nev. 1988), Joseph F. Sanson Inv. Co. v. Cleland, 625 P.2d 566, 567 (Nev. 1981), Clark County Sports Enterprises, Inc. v. City of Las Vegas, 606 P.2d 171, 175 (Nev. 1980). Further, an agreement can modify a written contract even if that contract states that any modification of its terms must be in writing. Silver Dollar Club v. Cosgriff Neon Co., 389 P.2d 923, 924 (Nev. 1964) ("Parties may change, add to, and totally control what they did in the past. They are wholly unable by any contractual action in the present, to limit or control what they may wish to do contractually in the future. Even where they include in the written contract an express provision that it can only be modified or discharged by a subsequent agreement in writing, nevertheless their later oral agreement to modify or discharge their written contract is both provable and effective to do so." citing Laurence P Simpson, Handbook On the Law of Contracts, § 63 (1964)) (internal citations omitted).

### C. Blanket Additional Insured Addendum

The central dispute between the parties focuses on whether Cowabunga Bay was entitled to coverage for the underlying actions because it had been added as an additional insured to IAM's

policy with Evanston. The Court finds that Cowabunga Bay is entitled to coverage as a validly added insured.

Defendants make two distinct arguments regarding the blanket additional insured addendum: first, they argue that the language of the blanket additional insured document is clear and unambiguous: a written contract is required for additional insured status. In support of this point, they cite to courts that have found that the language is unambiguous and requires a "written contract" for a party to qualify as an additional insured. See, e.g., Longwood Club Mgmt., LLC v. Depositors Ins. Co., No. 4:17-CV-1694 (S.D. Tex. 2018). Second, they argue that the language in the underlying contracts between IAM and Cowabunga Bay are unambiguous and that neither of them require IAM to add Cowabunga Bay as an additional insured under IAM's insurance policies.

The Court finds IAM's Evanston policy allows for additional insured to be added by "agreement" or "written contract" and does not provide a definitive or exclusive mechanism by which an entity becomes an additional insured. The plain text of the policy does indicate that anyone "to whom [the insured] is obligated by valid written contract to provide such coverage" is automatically covered by the agreement at its inception. However, contrary to what Defendants argue, this is not the *exclusive* way that an entity might become covered by the policy. The contract contemplates a situation where "coverage provided to the additional insured" is required "by contract or agreement." At a minimum, the contract terms create ambiguity as to whether or not an additional insured must be added by a written contract or may be added by a simple agreement. Given this ambiguity and the possible construction that an added insured may be added by a mere agreement, Nevada law dictates that this ambiguity must construed in favor of coverage. Farmers Ins. Exch. 832 P.2d at 377. Here, a liberal interpretation of the text of this policy provision favors

finding that an agreement between the parties that a blanket additional insured be added is a valid, alternative to a "written contract" to establish coverage.

The Court further finds that it is undisputed that an agreement to add Cowabunga Bay as an additional insured did exist. There was an actual written contract between IAM and Cowabunga Bay for aquatic operations management that explicitly contemplated indemnification and the requirement that IAM obtain and maintain insurance during the lifetime of the contract. The Evanston policy permitted an additional insured to be added by IAM. It also provided that such coverage would arise when IAM agreed with the potential insured, in this case Cowabanga Bay, to provide it. It is undisputed that prior to April 2017, Cowabunga Bay asked to be added as an additional insured and, crucially, that IAM agreed. Indeed, the April 12, 2017 email exchange, referenced at length by the parties, demonstrates unequivocally the existence of such an agreement as Cowabunga Bay would not have requested "proof" of coverage if there had not been an antecedent agreement to provide such coverage.

Additionally, the Court rejects the Defendants' argument that, to the extent there was coverage, the effective date of such coverage was July 19, 2017. This argument is based upon the more narrow construction of the policy as relates to the additional blanket insured that the Court has rejected. The Court has found that Nevada law requires that the contract be construed to allow an additional blanket insured to be added to the policy simply upon an agreement between the parties. The Court further finds that any ambiguity as to when such coverage for an additional blanket insured commences be construed in favor of coverage. This means that such coverage would begin upon the date of the agreement between IAM and its additional blanket insured. In this case, it is undisputed that IAM and Cowabunga Bay reached an agreement to add Cowabunga

Bay to IAM's insurance prior to April 12, 2017, as this was the date that Cowabunga Bay required proof of the coverage to which the parties had already agreed.

The Court thus finds that Cowabunga Bay was added as an additional blanket insured to the Evanston and StarStone policies and that this coverage was in effect at the time of the incidents in the underlying legal actions.

### D. Professional Services Exclusion

Defendant StarStone also claims that Plaintiff cannot seek equitable contribution from Defendants due to the exclusion pertaining to liability arising in connection with performance of services [hereinafter "professional services exclusion"] that exists in both Golden Bear's insurance policy contract[1] and in StarStone's insurance policy contract.[2] Defendant's arguments are predicated upon the assumption that the injuries alleged in the underlying suits arose from the negligence of IAM in providing water park management services to Cowabunga Bay. Defendant StarStone argues, first, that because Golden Bear had a professional services exclusion in its primary and excess policy, that its payment under the excess policy was voluntary and therefore that Golden Bear cannot demonstrate that it has paid more than its fair share of liability to satisfy

---

[1] "With respect to any professional services, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to the rendering or failure to render any professional service, arising out of any wrongful act of the insured, or of any other person for whose actions the insured is legally responsible arising out of any breach of duty, neglect, error, misstatement, performance of duty, misleading statement of omission in performing or failing to perform services for others for a fee." ECF No. 1-3, 35. These exclusions are incorporated by reference in Golden Bear's excess policy. See ECF No. 1-4, 4 ("the terms, conditions, agreements definitions, exclusions and limitations of the controlling underlying insurance policy are incorporated by reference as part of this Policy.") The Excess Policy also contains language that states that "This policy shall not apply to liability arising out the performance or non-performance of any clerical or professional function or duty in the conduct of the business of the named insured." Id. at 20.

[2] "This Policy shall not apply to any liability, damage, loss, cost or expense arising out of: 1. The rendering of; or 2. Failure to render; any professional services by or for any insured." ECF No.1-6, 18.

the elements of an equitable contribution claim. Second, they claim that StarStone's own professional services exclusion in its excess policy bars coverage for IAM and Cowabunga Bay for these types of claims and precludes StarStone from contribution to the settlement or defense of either of these suits.

The Court finds that the "professional services exclusion" does not bar recovery by Golden Bear. Defendant StarStone argues that because the contract between IAM and Cowabunga contains language involving the word "services," that the water park operations management services provided to Henderson by IAM fall within the category of "professional services."[3] However, the Court finds that the term "professional services" does not apply to the operations management services provided to Cowabunga by IAM and therefore that this exemption does not prevent coverage in this case. Nevada law indicates that a "professional service" must involve a profession where some degree of special authorization is required. See, e.g., Grayson v. Jones, 710 P.2d 76, 77 (Nev. 1985), Estate of Curtis v. S. Las Vegas Med. Inv'rs, LLC, 466 P.3d 1263, 1269 (Nev. 2020). [4] NRS § 89.020 defines a "professional service" as a "type of personal service which may

---

[3] In their opposition, Plaintiff argues that the professional services exception should be understood as limited to the provision of lifeguard services (including training and overseeing the pools) only and does not extend to IAM's responsibilities in "supervising, operating and managing the Park." Defendant StarStone argues the opposite: that nearly everything that IAM was contractually obligated to do for Cowabunga Bay constitutes a professional service for the purpose of the exclusion. Defendants' evidence for this proposition is the contract between IAM and Cowabunga, citing the list of "primary operations" and other assorted operations that IAM was obligated to perform.

[4] Defendant StarStone cites to Ninth Circuit case law in support of its argument that the exemption is enforceable in this context. See Shepardson Eng'g Assocs., Inc. v. Cont'l Ins. Companies, 21 F.3d 1115 (9th Cir. 1994) (regarding the professional services exclusion in context of engineers), HotChalk, Inc. v. Scottsdale Ins. Co., 736 F. App'x 646, 648–49 (9th Cir. 2018) (regarding the professional services exclusion in context of corporate directors and officers); Begun v. Scottsdale Ins. Co., 613 F. App'x 643, 644 (9th Cir. 2015) (regarding the professional services exclusion in context of corporate directors and officers). However, the Court finds these cases to support the contention that "professional services" has a particularized meaning given that all cases arise in the context of professions where specialized training and/or special licensing or certification is required.

legally be performed only pursuant to a license, certificate of registration or other legal authorization." Black's Law Dictionary defines "professional" as "someone who belongs to a learned profession or whose occupation requires a high level of training and proficiency." Black's Law Dictionary (11th ed. 2019), see also "profession", Bryan A. Garner, Garner's Dictionary of Legal Usage (3d ed. 2011) (in defining "professional" places "emphasis on prolonged specialized training in a body of abstract knowledge.") (internal citation omitted). Defendants' argument fails because, while it does acknowledge that IAM is engaged in the provision of "services," it does not adequately reconcile the meaning of the modifier "professional." Defendants do not outline why the supervision, management, and operation of the waterpark is the *kind* of service considered to be "professional." Under the definition above, the supervision, management, and operation of the waterpark does not require the special authorization of a "professional service" under the term's plain meeting or in reference to how the term is used in Nevada law. As a result, the underlying suits are not excluded under the professional services exclusion in StarStone's excess policy.

Moreover, Nevada law would require coverage even if the Court did not find that the exclusion was unambiguous and did not apply. That is because, at best, in terms of Defendant's argument, there is ambiguity as to the meaning of the term and the exclusion. The existence of such ambiguity leads to coverage under Nevada law. Farmers Ins. Exch. 832 P.2d at 377.

For the reasons stated above, StarStone's argument that Golden Bear's contribution to the Bankston settlement was voluntary and "cannot be considered a payment of more than Golden Bear's fair share of the settlement payment for which it can seek equitable contribution from StarStone," also fails here.

/ / /

/ / /

### E. Duty to Defend and Duty to Indemnify

In its Complaint, Plaintiff asks this court to issue declaratory and equitable relief on the basis of Defendants' breach of the duty to defend and the duty to indemnify. Under Nevada law, an insurer bears a duty to defend whenever it ascertains facts which give rise to the potential of liability under the policy. United Natl Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004). If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of coverage. Id. The duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy or when the resulting loss or damage *actually* falls within a policy's coverage. Century Surety Co. v. Andrew, 432 P.3d 180, 184 (Nev. 2018) (internal citations omitted).

Here, the coverage issue resolved above is dispositive of the duties to defend and indemnify. As the Court has found that Cowabunga Bay was an additional insured under IAM's Evanston policy and that the professional services exception does not apply to the underlying claims in this suit, the Court further finds that Evanston and potentially StarStone have a duty to defend and indemnify Golden Bear in the underlying actions. It is beyond dispute that the facts of the Bankston and Hicks suits give rise to potential liability triggering an insurer's duty to defend. Because Cowabunga Bay was an additional insured not subject to the professional services exclusion, the facts here also trigger Evanston's duty to defend. Because the Court finds that the loss and damages related to the Bankston and Hicks suits fall within the policy's coverage, Evanston and potentially StarStone also have a duty to indemnify.

### F. Equitable Contribution

In its Complaint, Plaintiff asks this court to order equitable contribution based on Defendants' duty to defend and the duty to indemnify. Plaintiff has not submitted a full accounting

of its expenses related to the above claims. However, this lack of evidence does not affect the Court's ability to find that Defendant is liable for the expenses it should have contributed in defending and indemnifying Bankston and Hicks actions. See Fed. R. Civ. P. 56(d).

Nevada has not addressed the duty of an insurer to contribute to an insured's defense by another insurer. See, e.g., Great Am. Ins. Co. of New York v. N. Am. Specialty Ins. Co., 542 F. Supp. 2d 1203, 1211 (D. Nev. 2008), Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co., No. 2:09-CV-01182-JCM (D. Nev. 2012), aff'd, 595 F. App'x 670 (9th Cir. 2014). In the absence of controlling precedent on state law, the Ninth Circuit has held that "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Arizona Elec. Power Co-op., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995) (internal citations omitted).

The Court finds that Nevada Supreme Court would recognize the duty of an insurer to contribute to an insured's defense by another insurer in the circumstances of this case. The Court notes that this is the majority rule. The doctrine of equitable contribution is recognized in the majority of states. See § 5:2. Equitable contribution, Allocation of Losses in Complex Insurance Coverage Claims (2020) (citing Alaska, Alabama, California, Arizona, Colorado, Georgia, Illinois, Indian, Montana, New York, Ohio, Oregon, Utah, New Jersey, Connecticut, Massachusetts, Pennsylvania, Tennessee, and Maine case law). Additionally, the District of Nevada has consistently indicated that the Nevada Supreme Court would likely find a cause of action for equitable contribution. See Evanston Ins. Co. v. W. Cmty. Ins. Co., No. 2:13-CV-01268-GMN, 2014 WL 4798536, at *11 (D. Nev. Sept. 26, 2014) ("The Nevada Supreme Court has often turned to California decisions when faced with issues of first impression…Accordingly, this court will also turn to California law in this case. Under California law, the right to contribution arises

when more than one insurer is obligated to defend the same loss or claim, and one insurer has … defended the action without any participation by the others.) (internal citations omitted), see also Great Am. Ins. Co. of New York v. N. Am. Specialty Ins. Co., 542 F. Supp. 2d 1203, 1211–12 (D. Nev. 2008), Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co., No. 2:09-CV-01182-JCM (D. Nev. 2012), aff'd, 595 F. App'x 670 (9th Cir. 2014), McClain v. Nat'l Fire & Marine Ins. Co., No. 2:05-CV-00706-LRH-RJJ (D. Nev. June 23, 2008) (all citing Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 301 (Cal. Ct. App. 1989)).

Generally, contribution is only appropriate where the policies insure the same entities, the same interest in the same property, and the same risks. See 15 Couch on Ins. § 218:3 (2021), see also Northern Ins. Co. of New York v. Allied Mut. Ins. Co., 955 F.2d 1353 (9th Cir. 1992), Great West Cas. Co. v. Truck Ins. Exchange, 358 F.2d 883 (10th Cir. 1966); Vance Trucking Co. v. Canal Ins. Co., 395 F.2d 391 (4th Cir. 1968). Additionally, where contribution is appropriate, the aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one insurer does not profit at the expense of the others. See 16 Couch on Ins. § 222:98 (2021), see also XL Specialty Ins. Co. v. Progressive Cas. Ins. Co., 411 F. App'x 78, 81 (9th Cir. 2011), In re Plant Insulation Co., 734 F.3d 900, 907 (9th Cir. 2013), Am. States Ins. Co. v. Ins. Co. of Pennsylvania, 800 F. App'x 452, 454–55 (9th Cir. 2020).

The Court finds that equitable contribution is appropriate here because the policies ensured the same entities for at least some of the same risks.  Golden Bear bore the full loss of settlement and has defended the Bankston and Hicks actions without the participation of Defendant Insurers, who had a duty to defend and a duty to indemnify under Nevada law. However, because the parties have not sufficiently briefed the total costs of defense and indemnification, nor the exact amount

and type of coverage their policies provide, the court cannot find the proportion of Plaintiff's expenses Defendant must contributed as a matter of law. Therefore, this issue remains for trial before this Court.

## VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that [ECF No. 51] Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that [ECF No. 64] Defendant Starstone Specialty Insurance Company's Counter Motion for Summary Judgment is DENIED.

**IF IS FURTHER ORDERED** that [ECF No. 66], Defendant Evanston Insurance Company's Motion for Summary Judgment is DENIED.

**IT IS FURTHER ORDERED** that [ECF No. 90] Objection to Magistrate Judge's Order is DENIED as moot.

As the determination of relief is unresolved, the Court will allow parties an opportunity to brief the issue and a separate proceeding to determine the amount of equitable contribution will be held. Parties may submit a joint scheduling order within two weeks of the issuance of this order.

**IT IS FURTHER ORDERED** that a status conference is set in this case for October 22, 2021, at 11:00 am in LV Courtroom 7C by videoconference before Judge Richard F. Boulware, II. The instruction regarding videoconference appearance to be issued.

DATED: September 30, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**